<table>
<tr><td colspan="3">United States Bankruptcy Court<br>District of New Jersey</td></tr>
<tr><td>By: Michael I. Assad (#330937)<br>Law Office of Mike Assad, P.C.<br>923 Haddonfield Road, Suite 336<br>Cherry Hill, NJ 08002<br>609-808-3300<br>mike@mikeassad.law<br>Attorney for Plaintiff</td><td></td><td></td></tr>
<tr><td>In re: Shontell Sharie Meredith,<br><br>Debtor.</td><td>Case No.:</td><td>26-22523-JNP</td></tr>
<tr><td>Shontell Sharie Meredith,<br>Plaintiff,<br>v.<br>South Jersey Gas Company,<br>Defendant.</td><td>Chapter:<br><br>Adv. No.:<br><br>Judge:</td><td>7<br><br>____________<br><br>Jerrold N. Poslusny, Jr.</td></tr>
</table>

**Verified Complaint to Compel Restoration of Gas Service
and for Damages Under 11 U.S.C. §§ 362 and 366**

Plaintiff Shontell Sharie Meredith, through her attorney, alleges against Defendant South Jersey Gas Company as follows:

## Introduction

Shontell Meredith and her two young children have had no hot water since May and, now that the weather has turned, no heat. One of the children has a medical condition that requires him to bathe frequently; his mother boils pots of water on the stove to do it. The family sleeps in one room around a single space heater. The forecast for the coming week is colder.

On November 3, 2026, the Plaintiff filed this chapter 7 case. That should have ended the problem. In 11 U.S.C. § 366, Congress decided that a utility may not refuse service to a debtor

because of an unpaid prepetition bill, and it gave the debtor twenty days to arrange adequate assurance of payment while service is provided. The Plaintiff called South Jersey Gas that evening, gave it the case number, and asked it to turn the gas back on. She called again the next day, and again three days later. Her attorney sent the petition and the clerk's notice of the case. Each time, South Jersey Gas gave the same answer: the request was with its bankruptcy department, review would take five to seven business days, and no one in that department could be reached.

A utility does not need a week to read a notice of bankruptcy, and nothing in the Bankruptcy Code gives South Jersey Gas five to seven business days to decide whether to comply with it. Every one of those days is a day a sick child is bathed from pots on a stove and a family sleeps in one room to stay warm. The Plaintiff asks the Court to order South Jersey Gas to do now what the law required of it on November 3: restore her gas service.

## Jurisdiction and Venue

1. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the District of New Jersey dated July 23, 1984, as amended September 18, 2012.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

3. Under Fed. R. Bankr. P. 7008, the Plaintiff consents to entry of final orders and judgment by the Court.

4. Venue is proper under 28 U.S.C. § 1409(a).

5. This proceeding is brought under Fed. R. Bankr. P. 7001 and 11 U.S.C. §§ 105(a), 362, and 366.

## Parties

6. The Plaintiff lives with her two young children in an apartment at 16 Desmond Run, Sicklerville, New Jersey 08081 (the "Residence").

7. The Plaintiff is the customer of record for gas service to the Residence.

8. The Residence is separately metered.

9. Defendant South Jersey Gas Company ("SJG") is a public utility regulated by the New Jersey Board of Public Utilities.

10. SJG is the only supplier of natural gas distribution service to the Residence.

## Facts

11. On or about May 1, 2026, SJG shut off gas service to the Residence for nonpayment of charges for service rendered before that date.

12. The SJG account number for the Residence ends in 8314.

13. On November 3, 2026 (the "Petition Date"), the Plaintiff filed a voluntary petition under chapter 7 of title 11 of the United States Code, beginning this case.

14. Under 11 U.S.C. § 301(b), the filing of the petition constitutes an order for relief.

15. SJG is listed as a creditor on the creditor matrix filed with the petition.

16. At all times relevant to this matter, SJG asserted or held a claim for a debt owed by the Plaintiff for gas service rendered before the Petition Date that was not paid when due (the "Pre-Petition Claim").

17. On November 3, 2026, at about 5:55 p.m., the Plaintiff called SJG.

18. The Plaintiff told SJG's representative that she had filed this chapter 7 case, and gave the representative the case number and her attorney's name and telephone number.

19. The Plaintiff asked that service be restored immediately because the weather was getting colder and she had no heat or hot water with small children in the home.

20. The representative told the Plaintiff that the request had to go through SJG's bankruptcy department for review, and that the review could take five to seven business days.

21. The representative told the Plaintiff that she could not be transferred to that department.

22. The representative directed the Plaintiff to send her information to contactus@sjindustries.com.

23. At 6:17 p.m. on November 3, 2026, the Plaintiff emailed SJG at that address a copy of the bankruptcy notice her attorney had provided and the case number, with the message: "Requesting reconnection of services immediately. Any questions, please communicate with my attorney. Thank you."

24. A copy of that email is attached as Exhibit A.

25. On November 4, 2026, at about 11:01 a.m., the Plaintiff called SJG again.

26. The Plaintiff told SJG's representative that she had filed this case, that she had small children at home without heat or hot water, and that she needed service restored.

27. After checking the notes on the Plaintiff's account, the representative told her, "well you only filed yesterday and it takes at least 5-7 business days for someone to even review it," and said that the request had been sent to someone.

28. The representative told the Plaintiff that she could not be transferred to SJG's bankruptcy or collections department and that everything had to go through contactus@sjindustries.com.

29. On November 5, 2026, at 7:38 a.m., SJG's Customer Contact Center emailed the Plaintiff asking her to "email a copy of your full bankruptcy paperwork including your case number" so that SJG could forward it "to the appropriate department for review."

30. A copy of that email is attached as Exhibit B.

31. On November 5, 2026, at 9:09 a.m., the Plaintiff's attorney emailed SJG a copy of the chapter 7 petition, including the creditor matrix listing SJG, and the Notice of Bankruptcy Case signed by the clerk assigning case number 26-22523.

32. The attorney's email identified the Residence as the service address and asked SJG to confirm that it was restoring service to the Residence as a result of the filing.

33. A copy of that email is attached as Exhibit C.

34. On November 5, 2026, at 3:26 p.m., SJG replied to the Plaintiff's attorney that the paperwork "has been forwarded to the appropriate department who will reach out to the customer if necessary."

35. A copy of that reply is attached as Exhibit D.

36. On November 6, 2026, at about 7:12 p.m., the Plaintiff called SJG a third time.

37. The representative told the Plaintiff that review would take five to seven business days and that there were no additional notes on her account.

38. The representative told the Plaintiff that SJG's collections department had left for the day because it leaves at 4:00 p.m.

39. As of November 8, 2026, SJG has not restored service to the Residence.

40. SJG has not contacted the Plaintiff since her attorney's email of November 5, 2026.

41. SJG has not given any date by which it will restore service.

42. SJG has not asked the Plaintiff for a deposit or any other assurance of payment.

43. SJG has not asked to inspect the Residence or to schedule a service visit.

44. SJG has stated no reason for withholding service other than review of the bankruptcy filing by its bankruptcy and collections departments.

45. To the Plaintiff's knowledge, there is no reason for SJG to withhold service other than the Pre-Petition Claim.

46. The Plaintiff will give SJG access to the Residence at any hour, on short notice, for any inspection, meter work, or appliance relighting that SJG requires to restore service safely.

47. The Plaintiff is ready to pay for gas service rendered after the petition date as it is billed.

48. As adequate assurance of payment under 11 U.S.C. § 366(b), the Plaintiff offers a deposit equal to one month's average charge for service to the Residence, payable over ninety days after restoration of service.

49. The Residence depends on gas for heat, hot water, and the clothes dryer.

50. Since the shutoff, the Residence has had no heat, no hot water, and no working clothes dryer.

51. One of the Plaintiff's children has special needs and a medical condition that requires him to bathe frequently.

52. Without hot water, the Plaintiff boils several pots of water on the stove each time that child needs to bathe.

53. The Plaintiff and her older son bathe with a camp shower she bought for the purpose, or drive thirty minutes to her parents' home to shower.

54. The apartment is cold at night.

55. The Plaintiff has one space heater and electric blankets, and has her children sleep in her room so that they stay warm.

56. The Plaintiff has bought thermal underwear for her children to wear under their pajamas.

57. Because the clothes dryer runs on gas, the Plaintiff takes the family's laundry to a laundromat and pays to wash and dry it there.

58. Colder weather is forecast for the coming week.

59. The Plaintiff expects that she and her children will have to move to a hotel or to a relative's home if service is not restored.

60. Running the space heater and the electric blankets has increased the Plaintiff's electric bill.

61. As a result of SJG's refusal to restore service, the Plaintiff has incurred out-of-pocket costs, including the cost of the camp shower, the thermal underwear, the laundromat, and the added electricity for the space heater and electric blankets.

62. As a result of SJG's refusal to restore service after notice of this case, the Plaintiff has suffered emotional distress, including anxiety, stress, and feelings of helplessness, from being unable to give her children heat and hot water, from having to tell them that she does not know when either will return, and from facing the prospect of leaving her home with them for a hotel or a relative's house.

63. As a result of SJG's refusal to restore service, the Plaintiff has incurred attorneys' fees and costs in seeking restoration of service and in prosecuting this action.

64. Under the regulations of the New Jersey Board of Public Utilities, a customer whose service was discontinued for nonpayment and who has satisfied the conditions for restoration is entitled to have service restored within twelve hours of proper application. N.J.A.C. 14:3-3A.9(a).

65. Under those regulations, such a customer may not be required to pay a deposit before service is restored. N.J.A.C. 14:3-3A.9(c).

66. On information and belief, SJG does not subject a customer who is not in bankruptcy, and who has satisfied the conditions for restoration, to a review of five to seven business days or longer before restoring service.

67. SJG's representatives attributed the delay in the Plaintiff's case solely to review by SJG's bankruptcy and collections departments.

**Count One**
**Refusal of Service Under 11 U.S.C. § 366(a)**

68. The Plaintiff incorporates paragraphs 1 through 67 as if fully set forth herein.

69. Under 11 U.S.C. § 366(a), except as provided in 11 U.S.C. § 366(b) and (c), a utility may not alter, refuse, or discontinue service to the debtor solely on the basis of the commencement of a case under title 11 or that a debt owed by the debtor to the utility for service rendered before the order for relief was not paid when due.

70. A refusal to restore service that was discontinued before the petition date is a refusal of service within the meaning of 11 U.S.C. § 366(a).

71. The Plaintiff requested restoration of service on the day she filed this case and has repeated the request since.

72. Under 11 U.S.C. § 366(b), SJG may refuse service only if the Plaintiff fails to furnish adequate assurance of payment within twenty days after the order for relief.

73. That twenty-day period ends on November 23, 2026.

74. The Plaintiff has offered adequate assurance of payment within that period.

75. By refusing to restore service, SJG has refused service to the Plaintiff solely on the basis of the commencement of this case and the unpaid prepetition charges, in violation of 11 U.S.C. § 366(a).

76. The Plaintiff has been damaged by SJG's refusal of service.

77. The Court may issue any order necessary or appropriate to carry out the provisions of title 11, including an order directing SJG to restore service and awarding the Plaintiff her actual damages. 11 U.S.C. § 105(a).

**Count Two**
**Discrimination Under 11 U.S.C. § 366(a)**

78. The Plaintiff incorporates paragraphs 1 through 67 as if fully set forth herein.

79. Under 11 U.S.C. § 366(a), a utility may not discriminate against the debtor solely on the basis of the commencement of a case or the debtor's nonpayment of charges for service rendered before the order for relief.

80. SJG routed the Plaintiff's restoration request to a review of indefinite length by its bankruptcy and collections departments.

81. SJG restores service to customers who are not in bankruptcy, and who have satisfied the conditions for restoration, without that review.

82. By subjecting the Plaintiff to that review, SJG has discriminated against her solely on the basis of the commencement of this case and the unpaid prepetition charges, in violation of 11 U.S.C. § 366(a).

## Count Three
## Violation of the Automatic Stay Under 11 U.S.C. § 362(a)(6) and (k)

83. The Plaintiff incorporates paragraphs 1 through 67 as if fully set forth herein.

84. Under 11 U.S.C. § 362(a)(6), the filing of the petition operates as a stay, applicable to all entities, of any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

85. The Pre-Petition Claim arose before the commencement of this case.

86. A discontinuance of service for nonpayment is a collection device.

87. The purpose of a discontinuance for nonpayment is to induce the customer to pay the arrears.

88. Under SJG's ordinary practice, payment of the arrears is what ends a discontinuance for nonpayment.

89. SJG's shutoff of the Residence was an act to collect the Pre-Petition Claim that was still in progress when the Plaintiff filed this case.

90. SJG has had actual notice of this case since November 3, 2026, when the Plaintiff gave its representative the case number.

91. SJG has had the petition, the creditor matrix, and the Notice of Bankruptcy Case since November 5, 2026.

92. SJG maintains a department dedicated to bankruptcy matters.

93. SJG is familiar with the automatic stay.

94. On November 3, 2026, after receiving notice of this case, SJG told the Plaintiff that service would not be restored until its bankruptcy department reviewed the matter, which could take five to seven business days.

95. On November 4, 2026, after reviewing the notes on the Plaintiff's account, SJG told her again that service would not be restored for at least five to seven business days.

96. On November 5, 2026, SJG demanded that the Plaintiff produce her "full bankruptcy paperwork including your case number" as a condition of review, although it already had the case number.

97. On November 6, 2026, SJG told the Plaintiff a third time that service would not be restored pending review.

98. On November 3, 4, and 6, 2026, SJG declined to connect the Plaintiff with its bankruptcy or collections department.

99. SJG routed the Plaintiff's request for service through its collections function.

100. Each of the acts described in paragraphs 94 through 99 left the Plaintiff with two options: remain without heat and hot water for an indefinite period, or pay the Pre-Petition Claim and obtain reconnection under SJG's ordinary practice.

101. The result of those acts is coercive: the Plaintiff must pay the Pre-Petition Claim or remain without gas service.

102. Because their result is to compel payment of the Pre-Petition Claim, each of those acts is an act to collect the Pre-Petition Claim in violation of 11 U.S.C. § 362(a)(6).

103. Each day that SJG has continued the shutoff after notice of this case, with that coercive result, is a further act to collect the Pre-Petition Claim in violation of 11 U.S.C. § 362(a)(6).

104. SJG knew of this case when it took each of those acts.

105. Each of those acts was intentional.

106. SJG's violations of the stay are therefore willful.

107. The Plaintiff is an individual.

108. The Plaintiff has been injured by SJG's willful violations of the stay.

109. The Plaintiff's actual damages include the cost of the camp shower, thermal clothing, space-heater electricity, and laundromat service.

110. The Plaintiff's actual damages include the cost and time of travel to bathe her family and do its laundry.

111. The Plaintiff's actual damages include the attorneys' fees and costs of this proceeding.

112. The Plaintiff's actual damages include the emotional distress of living, and watching her children live, in a cold apartment without hot water while she waited for SJG to act.

113. The Plaintiff is entitled to recover those damages under 11 U.S.C. § 362(k)(1).

114. Because SJG acted with knowledge of this case and of the Plaintiff's circumstances, this is an appropriate case for an award of punitive damages under 11 U.S.C. § 362(k)(1).

**Relief Requested**

**FOR THOSE REASONS**, the Plaintiff requests that the Court enter judgment in her favor and against SJG:

a. directing SJG to restore gas service to the Residence without requiring payment of any charge for service rendered before November 3, 2026, or any deposit, as a condition of restoration;

b. enjoining SJG from conditioning service to the Plaintiff on payment of any charge for service rendered before November 3, 2026;

c. declaring that SJG's refusal to restore service violated 11 U.S.C. § 366(a);

d. fixing the Plaintiff's adequate assurance of payment under 11 U.S.C. § 366(b) at a deposit equal to one month's average charge for service to the Residence, payable over ninety days after restoration of service, or in such other amount and on such other terms as the Court determines;

e. awarding the Plaintiff her actual damages for SJG's refusal of service, under 11 U.S.C. §§ 105(a) and 366;

f. awarding the Plaintiff her actual damages, including costs and attorneys' fees, and punitive damages under 11 U.S.C. § 362(k)(1); and

g. granting further relief in the Plaintiff's favor if necessary and proper under the law.

Date: November 8, 2026

**LAW OFFICE OF MIKE ASSAD, P.C.**
*Attorney for Plaintiff*

By: /s/ Michael I. Assad
Michael I. Assad

**Verification**

I, Shontell Sharie Meredith, am the Plaintiff in this adversary proceeding and the debtor in the chapter 7 case identified in the caption. I have read the Verified Complaint to Compel Restoration of Gas Service and for Damages Under 11 U.S.C. §§ 362 and 366. The facts stated in paragraphs 6 through 63 are true and correct and are within my personal knowledge, except that paragraphs 31 through 35 describe communications sent or received by my attorney, copies of which I have reviewed and which are attached as Exhibits C and D. I verify under penalty of perjury that the above is true and correct.

Date: November 8, 2026

/s/ Shontell Sharie Meredith
Shontell Sharie Meredith